LOCKHART *vs.* THE PUBLIC ADMINISTRATOR.

*In the matter of the estate of* THOMAS LOCKHART, *deceased.*

THE provisions of the statute requiring the Public Administrator to deposit all moneys collected by him, in a bank designated by the Common Council, to the joint credit of himself and the Comptroller of the City of New York, relate only to the safe deposit of the money; and they do not interfere with the jurisdiction of the Surrogate over the Administrator.

In respect to the payment of moneys, the Public Administrator occupies the same position as other administrators, and is bound to obey all lawful orders of the Surrogate, notwithstanding the special directions of the statute as to the mode of keeping his deposits.

Though an administrator is not bound to run the risk of making temporary investments for the benefit of the estate, he may under the direction of the Surrogate, be required, in a proper case, to deposit the funds in the Trust Company, so as to be earning interest, while the estate is in process of settlement.

P. B. SWEENY, *Public Administrator, in person.*

THE SURROGATE.—This is an application to compel the Public Administrator in the City of New York to invest certain moneys in his hands belonging to the intestate's estate, so that they may produce some interest during the period required by the statute to intervene before the accounts of the administrator can be settled. The statute requires the Public Administrator to deposit all moneys collected by him, within ten days after the receipt thereof, in such bank as the Common Council shall designate, to the joint credit of himself and the Comptroller of the City of New York, except so much as may be necessary to pay the current expenses of any proceedings authorized by law, which shall be allowed by the Surrogate, not exceeding twenty dollars in any one case. And it is further provided that the moneys so deposited shall be drawn out only on the joint check of the Public Administrator and the Comptroller, " in the cases where by law the Public Administrator is required to pay out moneys." (2 *R. S.*, 127, §§ 35, 37). I understand these provisions to relate only to the safe deposit of the money in the hands of the Public Administrator, the Common Council being responsible for his acts done *virtute officii.* For this reason they select the bank of deposit, and the funds cannot be drawn without the signature of the Comptroller. The regulation of the method in which the funds are to be deposited and kept, does not however interfere with the jurisdiction of the Surrogate over the administrator, and it becomes his duty to draw, " where by law" he " is required to pay out money." As to the payment of moneys, he stands in no other position than is occupied by all other administrators; but in this

respect he is bound to obey all lawful orders of the Surrogate. These deposits are to be distinguished from payments into the city treasury, as to which it is provided that the corporation shall not be liable for any interest thereon. (2 *R. S.*, 128, § 43.) If, however, the corporation is not liable for interest after the funds have been paid into the city treasury, much less is there any liability, when they have been deposited according to law in a bank. The matter then resolves itself into the simple question whether the Surrogate has power to compel an administrator to make a temporary investment of funds for the purpose of profiting the estate, during the pendency of the administration. If so, then the Public Administrator is affected by the exercise of such jurisdiction the same as any other administrator—and is not exempted therefrom, by reason of the special provisions in relation to the safe keeping and deposit of moneys received before the final settlement of the accounts. Where investments are directed to be made by the provisions of a will, there can be no doubt that an executor failing to comply with such directions may be charged with interest. But in respect to administrators, they are not ordinarily chargeable with interest within a year after the grant of letters, unless they have used the money, or unnecessarily withdrawn investments. An administrator is not however bound to run the risk of making temporary investments for the benefit of the estate, and if the funds be deposited in some safe bank when collected, to his account as administrator, he will be exempted from liability for interest. But there seems to be no good reason, why the administrator should not, under the direction of the Surrogate, deposit the funds where they may temporarily be earning interest, and yet be entirely safe. The estate, in such a case, will be benefited, and at the same time the administrator be held harmless. In the present instance there will probably be no claims of any great amount against the estate,—a large balance is already in the hands of the Public Administrator, in which minors are interested, and if no income is derived

from the property they will be left destitute of the means of support. I think therefore it is not only just, but entirely within the province of the court, to order the amount collected, to be deposited in the Trust company, where it will be earning something towards the maintenance of these orphans, while the administration is in process of settlement.